IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| PAMELA L. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-02273-TMP |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the court is plaintiff Pamela L. Davis's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 10.) For the reasons set forth below, the decision of the Commissioner is affirmed

I.    FINDINGS OF FACT

On October 11, 2012, Davis applied for disability insurance benefits and supplemental security income under Title II and Title XVI of the Act. (R. at 229-38.) In both applications, Davis alleged disability beginning on February 21, 2010, due to a

learning disability. (R. at 229, 233, 253.) Davis's applications were denied initially and upon reconsideration by the Social Security Administration ("SSA"). (R. at 148–49, 180–81.) At Davis's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 22, 2014. (R. at 105–25.) On October 14, 2014, the ALJ issued a decision denying Davis's request for benefits after finding that Davis was not under a disability because she retained the residual functional capacity ("RFC") to perform past relevant work or, alternatively, because she retained the RFC to perform work existing in significant numbers in the national economy. (R. at 89–99.) On March 21, 2016, the SSA's Appeals Council denied Davis's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision of the Commissioner. (Id.) Subsequently, on April 25, 2016, Davis filed the instant action. (ECF No. 1.) Davis asks this court to consider new evidence that she claims the Appeals Council should have considered. (ECF No. 12-1.) Davis also argues that the ALJ erred by (1) improperly evaluating Davis's mental impairments, (2) incorrectly determining that Davis's back condition was not severe, (3) improperly evaluating Davis's obesity, (4) incorrectly weighing Davis's credibility, (5) incorrectly weighing the medical source opinions in Davis's records, (6) improperly assessing Davis's RFC, (7) incorrectly concluding that Davis could perform her past work as a packer, and (8) incorrectly concluding that Davis could perform work existing in significant numbers in the national

economy.  (<u>Id.</u>)

## II. CONCLUSIONS OF LAW

**A.    Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision.  <u>Id.</u>; <u>Burton v. Comm'r of Soc. Sec.</u>, No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); <u>Cole v. Astrue</u>, 661 F.3d 931, 937 (6th Cir. 2011); <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is more than a scintilla of evidence but less than preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Kirk v. Sec'y of Health & Human Servs.</u>, 667 F.2d 524, 535 (6th Cir. 1981) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts

from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

## B. The Five-Step Analysis

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states,

> An individual shall be determined to be under a
> disability only if his physical or mental impairment or
> impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work. For purposes
> of the preceding sentence (with respect to any
> individual), "work which exists in the national economy"
> means work which exists in significant numbers either in
> the region where such individual lives or in several
> regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimants to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be

made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## C.   Additional Evidence Before the Appeals Council

Davis argues that the Appeals Council should have considered a medical source opinion from Paul E. Scates, M.D., that Davis submitted after the ALJ determined that she was not disabled. Dr.

Scates's opinion is dated October 6, 2015, and states that Davis suffers from disk narrowing, radicular pain, and bilateral carpal tunnel syndrome. (R. at 566–68.) In this opinion, Dr. Scates checked a number of boxes to indicate that these conditions cause Davis a variety of exertional and manipulative limitations. There is no information in either this opinion or the medical records that indicates the extent of Dr. Scates's relationship with Davis.

The Sixth Circuit has held that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 838 (6th Cir. 2016) (quoting Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)). Because Dr. Scates's opinion is additional evidence that Davis submitted to the Appeals Council after the ALJ's decision, the court will not consider it as part of the record.

Nonetheless, courts may remand a case to an ALJ for review of additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). As the language of the statute indicates, this places the burden upon the claimant to make this showing. See Miller, 811 F.3d at 839 (citing 42 U.S.C. § 405(g); Foster, 279 F.3d at 357).

Regarding the first requirement, in order to be new, the evidence must not have existed or been "available to the claimant

at the time of the administrative proceeding." Deloge v. Comm'r of Soc. Sec. Admin., 540 F. App'x 517, 519 (6th Cir. 2013) (quoting Foster, 279 F.3d at 357). The evidence meets the first requirement since Dr. Scates's opinion was not available to the ALJ at the time of the disability determination. However, the evidence does not meet the second requirement. "[E]vidence is 'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" Deloge, 540 F. App'x at 519 (alteration in original) (quoting Foster, 279 F.3d at 357). Dr. Scates's opinion is not material because Davis has not shown that Dr. Scates based the opinion upon Davis's condition during the relevant time period — before October 24, 2014, the date of the ALJ's decision. See Saulter v. Soc. Sec. Admin., No. 16-6476, 2017 WL 4857561, at *1 (6th Cir. Aug. 30, 2017) (finding that evidence relating to the claimant's physical condition after the ALJ's decision was not material to a claimant's applications under Title II and XVI); Brooks v. Sullivan, 941 F.2d 1209, 1991 WL 158744, at *2 (6th Cir. 1991) ("To establish medical eligibility for SSI, [the claimant] must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the [ALJ's] issuing of the final decision."); 20 C.F.R. § 416.330 ("If you file an application for SSI benefits before the first month you meet all the other requirements for eligibility, the application will remain in effect from the date it is filed until . . . the hearing

decision is issued."); 20 C.F.R. § 404.620.  By failing to demonstrate that the evidence is material, Davis has not carried the burden of proof prescribed by 42 U.S.C. § 405(g).  Thus, the court will not remand this case for an ALJ to review Dr. Scates's opinion.

**D.  The ALJ's Analysis of Davis's Mental Health**

Davis appears to argue that the ALJ violated 20 C.F.R. §§ 404.1520a, 404.1529, 416.920a, and 416.929.  (R. at 14–17.)  The court has carefully reviewed this portion of Davis's brief and has been unable to determine the exact nature of Davis's claim.  By discussing the ALJ's determination of the severity of her mental health conditions, Davis might be arguing about the ALJ's analysis at the second or third step of the disability analysis.  By citing 20 C.F.R. §§ 404.1529 and 416.929, Davis appears to be arguing about the ALJ's RFC determination at the fourth step.  See Stephenson v. Comm'r of Soc. Sec., 635 F. App'x 258, 263 (6th Cir. 2015) (citing 20 C.F.R. § 404.1529 as relevant to the ALJ's RFC determination).  By citing 20 C.F.R. §§ 404.1520a and 416.920a, Davis might be arguing about the ALJ's determination at the second, third, or fourth step.  See Courter v. Comm'r of Soc. Sec., 479 F. App'x 713, 722 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1520a, 416.920a as relevant to the ALJ's RFC determination); Long v. Comm'r of Soc. Sec., No. 114CV01192STADKV, 2017 WL 3438449, at *3 (W.D. Tenn. Aug. 10, 2017) (citing 20 C.F.R. §§ 404.1520a, 416.920a as relevant to the ALJ's analysis at the second step); Seachrist v.

Comm'r of Soc. Sec., No. 114CV01177STAEGB, 2017 WL 2670755, at *4 (W.D. Tenn. June 21, 2017) (citing 20 C.F.R. § 416.920a as relevant to the ALJ's analysis at the third step); Allen v. Colvin, No. 3:10-CV-01024, 2014 WL 1775564, at *15 (M.D. Tenn. Apr. 29, 2014) (citing 20 C.F.R. §§ 404.1520a, 416.920a as relevant to the ALJ's analysis at the second and third step).  Due to the ambiguity in Davis's argument, the court is unable to analyze this claim.

**E.    The ALJ's Analysis of Davis's Back Condition**

Davis argues that the ALJ violated 20 C.F.R. §§ 404.1520(c), 416.920(c) by not finding her back condition to be severe.  At the second step of the disability evaluation, the ALJ found that Davis has the following severe impairments: obesity, stenosing tenosynovitis, bilateral sensorineural hearing loss, affective mood disorder, and borderline intellectual functioning.  (R. at 91.)

The subsections of the Code of Federal Regulations that Davis cites in support of this argument deal specifically with the second step of the disability analysis.  See Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014) ("At step two, [the ALJ] found that [the claimant] suffered from the following severe impairments that significantly limit her ability to do basic work activities under 20 C.F.R. § 404.1520(c) . . .").  If an ALJ finds at the second step that a claimant has one severe impairment, then "[t]he fact that some of [the claimant's] impairments were not deemed to be severe at step two is . . . legally irrelevant." Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008); Williams

-10-

v. Comm'r of Soc. Sec., No. 16-1459, 2017 WL 4541355, at *3 (6th Cir. Mar. 1, 2017). Here, the ALJ found several of Davis's conditions to be severe and moved on to the third step of the analysis. Thus, the court the ALJ did no err when assessing the severity of Davis's back conditions at step two.

## F.   The ALJ's Analysis of Davis's Obesity

Davis argues that the ALJ violated Social Security Ruling 02-1p by not addressing the effects of her obesity at every step of his analysis. In his opinion, the ALJ stated that he found Davis's obesity affected her ability to perform routine movement and exacerbated her other conditions. He specified that he had incorporated the effects of this condition into Davis's RFC. (R. at 96.)

In SSR 02-1p, the SSA noted that obesity could impact claimants' RFCs because it could alter their ability to function in an exertional or social capacity. 2002 WL 34686281, at *6 (S.S.A. Sept. 12, 2002). However, the ruling "does not mandate a particular mode of analysis" that an ALJ must follow when assessing the impact of a claimant's obesity. Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006). The Sixth Circuit has held that an ALJ can meet the requirements of SSR 02-1p by crediting "RFCs from physicians who explicitly accounted for [the claimant's] obesity." Miller, 811 F.3d at 835 (quoting Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 443 (6th Cir. 2010)). But see Shilo v. Comm'r of Soc. Sec., 600 F. App'x 956, 959 (6th Cir. 2015) ("[Obesity] must

be considered throughout the ALJ's determinations . . . ."). Here, by stating that he had considered Davis's obesity and integrated the effects of it into his RFC determination, the ALJ adequately addressed the effects of Davis's obesity. See Austin v. Comm'r of Soc. Sec., 714 F. App'x 569, 574 (6th Cir. 2018) (finding that an ALJ correctly addressed a claimant's obesity when he "specifically stated that he considered [the claimant's] obesity in determining [the claimant's] residual functional capacity").

## G. The ALJ's Assessment of Davis's Credibility

Davis argues that the ALJ erred by finding her description of her symptoms only partially credible. In her function report and testimony, Davis described her mental limitations as negatively affecting her ability to remember and complete tasks, concentrate, understand instructions, read, handle stress, adapt to change, socialize, sleep, and maintain employment. (R. at 112–13, 118–23, 271, 276–77.) To underscore the severity of her condition, she mentioned that she attended special education classes in high school and received a special education diploma. (R. at 110.) She described her physical limitations as affecting her ability to breathe, look at a laptop for too long, hear what other people say, work in a loud environment, communicate clearly, write, move her fingers, and maintain employment. (R. at 111–17, 123–24.) Despite these limitations, Davis stated that she regularly takes her sons to school, cleans the entire apartment (although her son helps), washes clothes, makes a variety of meals (although she needs help

understanding the numbers on the microwave), goes to the movies or out to eat with her sons and sister, and attends church. (R. at 118, 272-73, 275.) She stated that she grocery shops twice a month but, due to panic attacks, she will leave the grocery store if the line is too long or too slow. (R. at 120, 274.) She indicated in her function report that, aside from balancing a checkbook and never having had a savings account, she has no problem managing money; however, at the hearing she stated she had trouble counting change. (R. at 112, 274.) In her function report, when describing her mental limitations, she stated that she has "been like this all [her] life." (R. at 272.)

In the ALJ's opinion, he summarized Davis's description of her condition and highlighted that she claimed she was fired for not being able to perform her job as a packer correctly when she had worked at that job for nine years before being terminated. (R. at 95-96.) The ALJ concluded that Davis's testimony could not be fully credited because the education records did not show she received special education; her treating physicians thought that hearing aids would benefit her; and she regularly cleaned the house, went out to eat, shopped for groceries, and attended church. (R. at 96-97.) Elsewhere in the opinion, the ALJ noted that surgery had improved Davis's range of motion in her hand and that treatment notes recorded her stating that medication improved her mental condition. (Id.)

The Sixth Circuit has "'held that an administrative law

judge's credibility findings are virtually unchallengeable' absent compelling reasons." Shepard v. Comm'r of Soc. Sec., 705 F. App'x 435, 442 (6th Cir. 2017) (quoting Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 511 (6th Cir. 2013)). Those compelling reasons appear when an ALJ's credibility determination is not reasonable or supported by substantial evidence. Rogers, 486 F.3d at 249. When making a credibility determination, an ALJ "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[1] In the event that "an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record . . . ." Id.; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Beyond objective medical evidence, the SSA has identified several categories of evidence that an ALJ should consider. These include the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms;

_____

[1]This court previously found that SSR 16-3p, the SSA's new ruling on assessing a claimant's subjective complaints, applied to judicial review of ALJ opinions predating March 28, 2016. See Patterson v. Colvin, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *6–9 (W.D. Tenn. Dec. 16, 2016), report and recommendation adopted, No. 13-1040, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017). But, the SSA has republished SSR 16-3p and clarified that, while ALJs are to apply SSR 16-3p to any determination or decision that they make after March 28, 2016, the SSA expects reviewing courts to apply the "rules that were in effect at the time we issued the decision under review." SSR 16-3p, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017). The ALJ's decision in this case is dated October 14, 2014. Hence, this court will assess the ALJ's compliance with 96-7p. See Andres v. Comm'r of Soc. Sec., No. 17-4070, 2018 WL 2017281, at *5 n.5 (6th Cir. Apr. 30, 2018) ("SSR 16-3p's substantive aspects do not

aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication that the claimant receives; and any other information relevant to these symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). "[H]armless error analysis applies to credibility determinations in the social security disability context." <u>Ulman</u>, 693 F.3d at 714.

There are some errors in the reasons that the ALJ provided for discounting Davis's description of her condition. For example, there is evidence in the record that Davis received a "specialized" diploma. (R. at 368.) However, any error by the ALJ is harmless because the ALJ presented sufficient, valid bases for giving little weight to Davis's testimony. The ALJ correctly noted that Davis's account of her daily activities undermines her description about the severity of the limitations caused by her condition. More importantly, as the ALJ pointed out, Davis maintained employment for nine years while experiencing nearly all of these symptoms. Consequently, the court finds that substantial evidence supports the ALJ's credibility finding, even if that finding contained partially erroneous analysis. <u>See</u> <u>Meuzelaar v. Comm'r of Soc. Sec.</u>, 648 F. App'x 582, 585 (6th Cir. 2016) (finding an ALJ's error when making a credibility determination to be harmless because "other problems with [the claimant's] testimony amply support[ed] the ALJ's credibility finding").

## H.  Weight Given to Medical Source Opinions

apply retroactively, so SSR 96-7p controls here.").

1.  Opinions of Gilbert Katz, M.D., and Anne Griffin, A.P.N.

Davis argues that the ALJ should have given greater weight to what she purports to be the joint opinion of two of her treating sources, Dr. Katz and Griffin.  Davis's records indicate that she visited Griffin six times from July 12, 2013 to June 30, 2014, in order to receive treatment for anxiety and depression.  (R. at 490–96, 553.)  At Davis's initial psychiatric evaluation with Griffin, Griffin diagnosed her with depressive disorder and moderate mental retardation.   (R. at 491.)   During these sessions, Griffin described Davis as normal in appearance and cooperative but also, at times, as anxious, pressured, and having an impaired ability to concentrate.  (Id.)  By the end of the treatment, Davis informed Griffin that she was experiencing an improvement in her symptoms and her sleep.  (R. at 494–95, 553.)

Griffin's and Dr. Katz's signatures both appear on a mental residual functional capacity assessment form dated September 17, 2013.  (R. at 480, 529.)  The copies of the form provided to the court are challenging to read, but appear to indicate that Davis has difficulty understanding information, sustaining concentration, interacting with others, and adapting to changes.  (R. at 478–79, 527–28.)   There is also a note on the form listing Davis's diagnoses, noting she struggled with simple math and complex instructions, and stating that the writer of the note believed she would have difficulty functioning in a workplace environment due to her limited ability to focus.  (R. at 529.)  A copy of this page

has an additional note on it indicating Davis's condition remains unchanged that is signed by Griffin and dated June 30, 2014. (R. at 530.)

In his opinion, the ALJ summarized each treatment session that Davis had with Griffin. (R. at 96.) The ALJ gave Griffin's opinion little weight, finding that it was overly restrictive in light of Davis's improvement with medication and was inconsistent with Davis's own daily activities. (R. at 96–97.) The ALJ did not mention Dr. Katz.

Treating sources are accepted medical sources who have or have had an "ongoing treatment relationship" with a claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The SSA deems a relationship to be an ongoing treatment relationship when a claimant has visited a medical treatment source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id. The burden is on the claimant to prove that this relationship exists. Grisier v. Comm'r of Soc. Sec., No. 17-3570, 2018 WL 417557, at *2 (6th Cir. Jan. 16, 2018). Should the claimant meet this burden, the ALJ will then assess whether the treating source's opinion is consistent with the medical records and is well-supported by clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1257(c)(2), 416.927 (c)(2). If it is, the ALJ will give the opinion controlling weight; if it is not, the ALJ will apply a set of regulatory factors to the opinion to determine what weight to

give it.  Id.  Those factors include the length and nature of the
relationship, the frequency of exams, the evidence upon which the
medical source bases her or his opinion, the opinion's consistency
with the record as a whole, whether the source has specialized in
her or his area of practice, and any other relevant factor.  20
C.F.R. §§ 404.1527(c)(2)-(6), 416.927 (c)(2)-(6).  ALJs should
"always give good reasons" in their decisions for the weight that
they gave the opinion of a treating source.  Id.

Davis argues that, because Dr. Katz was Davis's treating
physician, and because Griffin was an acceptable medical source,
the ALJ should have given their joint opinion controlling weight.
Concerning Davis's first argument, the court finds that she has not
presented sufficient evidence to demonstrate that Dr. Katz was her
treating physician.  As mentioned, the key consideration for
finding a treatment relationship is whether the frequency of visits
is consistent with the accepted medical practice to create such a
relationship.  See Grisier, 2018 WL 417557, at *2.  Here, there is
insufficient information in the record and briefing for the court
to determine whether Davis ever saw Dr. Katz, much less at a
typical frequency for someone with her medical conditions.
Accordingly, Davis has not met her burden by demonstrating that a
treating relationship existed and the ALJ did not err by choosing
not to analyze the significance of a signature that appears only
once in Davis's records.

As for the ALJ's treatment of Griffin's opinion, Davis is

mistaken in her claim that Griffin is an acceptable treating source. It is true that the current Code of Federal Regulations identifies certain types of nurses as acceptable sources whose opinions would merit controlling weight if a treating relationship was established; however, this acceptable source status only applies to opinions contained in claims filed "on or after March 27, 2017." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). Since Davis's claim was filed on October 11, 2012, the court will not consider whether Griffin is the type of nurse who might qualify as an acceptable source.

While Davis correctly points out that opinions from other medical sources may be of great value, see SSR 06-03P, 2006 WL 2329939, at *3, *5 (Aug. 9, 2006) ("[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source . . . .'"), here the ALJ gave sufficient bases for finding Griffin's opinion of little value. When assessing opinions from other medical sources, an ALJ employs the same factors used for analyzing a treating source's opinion, and applys whatever factors are relevant to the opinion. 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). The ALJ properly found the opinion overly restrictive in light of Griffin's treatment notes and Davis's daily activities. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is

with the record as a whole, the more weight we will give to that medical opinion."). Thus, the court finds that the ALJ did not err when weighing Dr. Katz's and Griffin's joint medical source opinion.

### 2. Opinion of Vincent C. Kent, M.D.

Davis argues that, because Dr. Kent specialized in orthopedic surgery, the ALJ erred by giving little weight to his opinion. Dr. Kent examined Davis on June 4, 2014. (R. at 548–51.) He noted that she had an abnormal gait pattern, hamstring tightness, and spine inflexibility. He found tenderness along the lumbar spine and a muscle spasm in the lumbrosacral spine. He indicated that her hip examination was normal. He stated that Davis had tenderness over the carpal tunnel but that Davis retained the ability to flex her fingers. (Id.)

Portions of the notes from the exam are ambiguous. For instance, in one section it says, "There is tenderness with palpation over the right sciatic notch"; however, what appears to be the word "no" is hand-written over the words "with palpitation," leaving it unclear whether there is tenderness without palpitation, or whether there is no tenderness at all. (R. at 548.) In another section the notes state, "Walking on tiptoes is performed with ease on the right and/or left"; however on the words "with ease" there is line that begins under the word "with" and extends into the word "ease." (Id.) It is unclear whether the line is intended to underline or strike these words. The court has disregarded all

ambiguous portions of the exam notes.

Based upon this exam, Dr. Kent diagnosed Davis with
degenerative disk disorder, early Marie-Strumpell disease, carpal
tunnel syndrome, and trigger finger. As a result of these
diagnoses, Dr. Kent opined that Davis had severe physical
limitations. He found that she could occasionally lift and carry
ten pounds, but never more than that; that she could not sit,
stand, or walk for more than an hour at a time or total in an
eight-hour work day; that she could occasionally reach with her
hands, but could never handle, finger, feel, push, or pull; that
she could occasionally operate foot controls, but never climb,
balance, stoop, kneel, crouch, or crawl; that she could understand
and communicate simple information; that she had severe
environmental limitations; and that she few limitations on her
ability to do certain work-related activities. (R. at 540–45.)

The ALJ disregarded Dr. Kent's diagnoses, pointing out that
the diagnoses were not based on x-ray results and that no other
treatment notes in the record showed that Davis has a back problem.
(R. at 92.) He also gave little weight to Dr. Kent's opinion
because he found it to be inconsistent with Dr. Kent's own
examination findings, inconsistent with the evidence in the record,
and based only on a single examination.

An ALJ employs a "sliding scale of deference" for medical
opinions depending upon each opinion's source. Norris v. Comm'r of
Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). Opinions from

treating sources typically merit the most deference, followed by opinions from examining sources, and then from non-examining sources. See 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). When weighing medical opinions from examining sources, an ALJ must apply the same factors used for analyzing a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Davis is correct in pointing out that an ALJ should consider a source's qualifications when determining what weight to give the source's opinion. But specialization is only one of the factors that an ALJ considers. Here, the ALJ also considered other factors that undermined the significance of Dr. Kent's opinion, including the length of the relationship, the opinion's inconsistency with Dr. Kent's examination, the lack of objective medical evidence to support Dr. Kent's diagnoses, and the opinion's inconsistency with the overall treatment record. Thus, the court finds that, despite Dr. Kent's specialization in the area of orthopedics, the ALJ properly decided that the flaws in Dr. Kent's analysis rendered his opinion of little weight.

## I. The ALJ's RFC Determination

Davis argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not base the RFC upon all of the relevant medical evidence, but rather relied only upon the medical evidence that was favorable to a finding of non-disability. The ALJ found that Davis has the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except that she has gross

dexterity sufficient to grasp, hold and turn objects; should avoid excessive amounts of noise; and limited to unskilled work involving simple, routine, repetitive tasks; and she should perform work involving objects rather than people.

(R. at 93 (citation omitted).) In the analysis explaining his RFC determination, the ALJ reviewed all of Davis's medical record in detail. (R. at 94-97.) He noted that a successful surgery had been performed on her right hand, that she had suffered from hearing loss since a young age, that she was obese, and that she had received mental health treatment spanning several years. After explaining why he gave little weight to the medical source opinions in her records, the ALJ stated that he based the RFC primarily upon the treatment notes in the record and Davis's subjective complaints contained in those notes. (R. at 97.)

A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must assess the claimant's RFC based on all of the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996) ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). "[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'" Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004)

(alteration in original) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). While ALJs may not "cherry pick[] evidence," they may "neutrally . . . weigh[] the evidence." White v. Comm'r of Soc. Sec., 572 F.3d 272, 284 (6th Cir. 2009).

Davis claims that the ALJ's RFC determination is incorrect because the ALJ erred when evaluating the condition of her hand by failing to give greater weight to the opinion of Dr. Kent. She also suggests that the Appeals Council erred by not considering Dr. Scates's opinion on this point. For the reasons discussed above, the ALJ did not err by giving Dr. Kent's opinion little weight, nor did the Appeals Council err by setting aside Dr. Scates's opinion. When assessing the condition of Davis's hand, the ALJ properly considered all of the evidence in the medical record, including the results of Davis's hand surgery and the lack of further treatment after the surgery. See Id. Thus, the court finds that the ALJ's RFC determination is supported by substantial evidence.

## J.   The ALJ's Finding that Davis Could Perform Past Work

Davis argues that the evidence does not support the ALJ's determination that she could return to past work as a packer. In his opinion, the ALJ stated that Davis's RFC does not prevent her from returning to past work because the Dictionary of Occupational Titles lists packer as an unskilled position and because, according to Davis's own report, when working as a packer, usually lifted objects weighing no more than fifteen pounds and never handled small objects. (R. at 97.)

When considering whether a claimant's RFC prevents the claimant from performing past work, an ALJ will consider the claimant's description of her or his past work.  See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  An ALJ will also consider other relevant evidence "such as the 'Dictionary of Occupational Titles' and its companion volumes."  Id.  Although testimony from a vocational expert may be helpful, and an ALJ is certainly allowed to consider such testimony, it is not required at this step of the disability determination.  See Russell v. Comm'r of Soc. Sec., 670 F. App'x 388, 389 (6th Cir. 2016); 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  If the ALJ finds that the claimant can return to past work, then the claimant is not disabled, and the ALJ need not consider the fifth step of the analysis.  See 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

Davis claims that the ALJ's finding was erroneous because it is not supported by Dr. Katz's and Griffin's medical opinion and because the ALJ should have obtained a vocational expert to assist him in making this determination.  For the reasons discussed above, the ALJ did not err by disregarding Dr. Katz's and Griffin's opinion.  Additionally, while it may have been helpful to the opinion, the ALJ was not required to consult with a vocational expert.  See Russel, 670 F. App'x at 389.  By considering Davis's description of the duties of a packer as the basis for his determination, the ALJ complied with what was required of him.  Furthermore, at this stage of the analysis, it was still Davis, not

the ALJ, who bore the burden of proving that she could not return to past work. See Siebert, 105 F. App'x at 746. Therefore, the court finds that substantial evidence supports the ALJ's determination that Davis could return to past work. Because the ALJ correctly determined that Davis was not disabled at the forth step of the analysis, the court will not consider Davis's remaining arguments about the ALJ's fifth-step analysis.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision that Davis is not disabled is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

May 14, 2018